[No. 3130.]

WILLIAM COOPER *alias* JOHN JACKSON *v.* THE STATE.

1. PRACTICE—CHARGE OF THE COURT—CIRCUMSTANTIAL EVIDENCE.— When the inculpatory evidence is purely circumstantial, it is the imperative duty of the court to give in charge the law controlling such evidence.

2. CONTINUANCE—NEW TRIAL.—Note a state of case wherein a continuance

having been refused, the court, in view of the evidence adduced, should have granted a new trial.

APPEAL from the District Court of Falls. Tried below before the Hon. B. W. Rimes.

The indictment charged the appellant with the theft of a horse, the property of Harry Stuart, in Falls county, Texas, on the twenty-third day of December, 1883. His trial resulted in his conviction, and his punishment was assessed at a term of fifteen years in the penitentiary.

Harry Stuart was the first witness for the State. He testified that on the night of December 23, 1883, he tied his mare with a long, large sized rope to his crib, which stood inside of his lot, and last saw her on that night between nine and ten o'clock. She was then securely tied to the crib. Next morning she was gone. Witness tracked her, and followed the trail made by dragging the rope, in different directions  or about a mile, at which point she got into the road leading from witness's house to Reagan. At this road the witness abandoned the search, and offered a reward for her recovery. Witness recovered the animal through the agency of W. P. Marlin and Mr. Johnson a few days later. The mare was a large bay animal, branded N E P on the thigh and F 6 on the shoulder. The witness was quite well satisfied that the defendant knew the mare, as he had often seen the witness riding her. Defendant lived on the Davis place, about one and a half miles distant from Reagan, in a direction from Reagan other than that in which witness lived. The trail of the mare, when witness last saw it, was not going in the direction of the Davis place where defendat lived, nor would she have approached the defendant's residence any nearer than where she entered the road, if she followed the road. Witness had not seen the defendant for a week or more prior to the loss of the mare. Witness saw no other than the mare's tracks on her trail, nor did he find any other tracks about the crib where the animal was tied. Witness tied the rope in a hard knot, and as there was nothing to show that the animal had broken loose, the witness was of impression that the rope was untied by some person. The mare was the property of the witness, was worth about sixty-five dollars, and was taken in Falls county, Texas, on the night of December 23, 1883, without the consent of the witness.

Alfred Gillum was the next witness for the State. He testified,

that for ten years past he had resided in Robertson county, about one and a quarter miles from the town of Calvert. The witness saw the defendant on Monday, December 24, 1883. At about ten o'clock on that morning the defendant passed witness's house, riding the mare for theft of which he was now on trial. He was going in the direction of Calvert. The witness mounted his own horse just as defendant passed, and the two rode together into the town of Calvert. En route the defendant told witness that he was going to Hearne after a mule. The witness proposed to trade for the mare, and between three and four o'clock that evening the defendant returned to the witness's house with the mare, and a trade was effected, the witness giving the defendant two colts and twelve dollars in money for the animal. The defendant, at the time of the trade, told the witness that he got the animal from Mr. Ward, the sheriff of Falls county, and that he, the defendant, lived on Ward's place, five miles northwest from the town of Marlin. He gave the witness a bill of sale to the mare, the witness writing the same and signing defendant's name to it. This trade was made in the presence of a hired man, then on the witness's place, but who had since gone. Witness identified the defendant, and was absolutely positive that he was the man who sold him the mare in question, at the time and place, and in the manner stated. If the defendant was at Bremond on that day, and took the train for Calvert on that day, it would have been impossible for the witness to have seen him at the time and place that he did, on account of the distance and the time of day. But he could not have been at Bremond and taken the train to Calvert on that day. The witness was absolutely certain that the defendant was the man who rode with him into Calvert in the morning, and returned and sold him the mare in the evening. Witness identified him when he was first arrested in Calvert, and again at the examining trial before Justice T. G. Fountain. The witness's house was situated about fourteen miles from Bremond, and the train going from Bremond to Calvert passes Bremond about eleven o'clock in the morning. The witness never saw the defendant prior to the said twenty-fourth day of December. Here the bill of sale, bearing date December 25, 1883, was exhibited and read in evidence. Witness did not know how it came about that the bill of sale was dated December 25, except that it occurred by clerical mistake. He knew that the

bill of sale was written by himself, and executed by the defend-
ant on December 24, 1883. The bill was signed thus:

his
" John  ×  Jackson."
mark

John Ward, sheriff of Falls county, Texas, was the next
witness for the State. He testified that he did not sell the de-
fendant the mare in question. The defendant did not live on
the witness's place. Witness knew nothing about him, and saw
him for the first time, to know him, after his arrest on this
charge.

W. P. Marlin, deputy sheriff of Falls county, testified, for the
State, that he arrested the defendant at Calvert, Robertson
county. The witness heard that the stolen mare was at Mr.
Gillum's place, near Calvert, and, late one evening, went there
to see about it. He described the mare to Mr. Gillum, who told
witness that the mare was in the field, and could not be caught
that night, but that he would bring her in next morning. Mr.
Gillum did bring the animal in, as he promised, and delivered
her to witness. Harry Stuart offered a reward for the recovery
of the animal, and, as stated, she was recovered by the witness.
Witness was aided in the arrest of defendant by Mr. Johnson,
of Calvert. Defendant was brought, in arrest, to Reagan on
Friday, December 28, 1883.

Witness knew the mare in question, and knew that she be-
longed to Mr. Harry Stuart. Alfred Gillum went to the cala-
boose in Calvert, and there saw and identified the defendant as
the party who sold him the mare. Witness delivered the mare
to Mr. Harry Stuart. The distance between the residences of
Harry Stuart and Mr. Gillum is about sixteen miles.

The motion for new trial raised the questions involved in the
opinion.

No brief for the appellant has reached the Reporters.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. As made by the record the case
was one wholly of circumstantial evidence, and the court failed
to instruct the jury as to that character of evidence. Under
oft-repeated decisions, such failure in the charge in a felony
case is fundamental error.

Defendant's application for continuance was to enable him to

procure the testimony of two witnesses by whom he expected to prove that, on the day of the alleged sale of the stolen animal to the prosecuting witness Gillum, he went to Bremond and left on the train going toward Calvert. There is no question of diligence raised as to this application. Defendant was identified as the thief alone by Gillum, who had never known him before, and who testified: " If defendant was at Bremond and took the train that day for Calvert, then on account of the distance, and because of the time of the day I saw him in the morning, it would have been impossible for him to have been at the place I saw him, and at the time I saw him." Gillum says he traded for the mare, giving defendant for her two colts and twelve dollars difference in money. Had the prosecution shown that these colts were subsequently seen in possession of, or that they had been disposed of by defendant, this might have been conclusive of the question of defendant's identity. Under the evidence, however, we think that the court should have granted the new trial, when the proposed testimony of the absent witnesses is considered in connection with it.

The judgment is reversed and cause remanded for a new trial.

*Reversed and remanded.*

Opinion delivered May 28, 1884.